**ROYAL CONSUMER PRODUCTS, LLC; and Mafcote, Inc., Appellants/Cross-Appellees**

v.

**SAIA MOTOR FREIGHT LINE, INC., Appellee/Cross-Appellant**

and

**Royal Consumer Products, LLC; and Mafcote, Inc., Appellants**

v.

**Saia Motor Freight Line, Inc., Appellee**

NO. 2014–CA–000945–MR, NO. 2014–CA–001649–MR, NO. 2014–CA–000954–MR

Court of Appeals of Kentucky.

FEBRUARY 26, 2016; 10:00 A.M.

BRIEF FOR APPELLANTS/CROSS–APPELLEES: William J. Walsh, Louisville, Kentucky, Joseph H. Lessem, New York, New York

ORAL ARGUMENT FOR APPELLANTS/CROSS-APPELLEES: Joseph H. Lessem, New York, New York

BRIEF FOR APPELLEE/CROSS-APPELLANT: Ashley W. Ward, John W. Pollom, Lexington, Kentucky, C. Frederic Marcinak, III, Greenville, South Carolina

ORAL ARGUMENT FOR APPELLEE/CROSS-APPELLANT: C. Fredric Marcinak, III, Greenville, South Carolina

BEFORE: JONES, MAZE, AND STUMBO, JUDGES.

*OPINION*

MAZE, JUDGE:

Royal Consumer Products, LLC and its parent company Mafcote, Inc., (hereinafter collectively referred to as "RCP") appeal from two judgments of the Jefferson Circuit Court. RCP contends that the trial court erred in granting partial summary judgment in favor of Saia Motor Freight Line, Inc. (hereinafter "Saia Motor") in a case concerning damages due to untimely or non-conforming shipments of goods. Saia Motor also appeals the trial court's grant of partial summary judgment in favor of RCP on a related issue. Finally, RCP challenges the trial court's award of attorneys' fees and costs to Saia Motor following a bench trial and verdict in the latter's favor.

Genuine issues of material fact remain concerning whether Saia Motor successfully limited its liability under federal law and whether it was entitled to rescind discounted freight charges after RCP failed to make timely and full payment. Accordingly, we affirm in part, reverse in part, and remand as to RCP's appeal of partial summary judgment; we reverse and remand as to Saia Motor's cross-appeal; and we vacate and remand the trial court's award of attorneys' fees and costs, pending disposition on the resulting unresolved issues.

### Background

#### I. Factual History

Beginning in 2009, RCP contracted with Saia Motor to carry freight from its various facilities to its numerous customers. The parties contest many of the events and terms surrounding their negotiations prior to beginning shipments; however, they agree that they signed no master contract. Instead, Saia Motor maintained and published on its website a tariff, or schedule of shipping rates, which stated in part, that

"contract terms shall be those as indicated in the carrier's bill of lading[.]" The tariff also stated, "[c]arrier will not be responsible ·for any liability provided on Bills of Lading except in accordance with … this tariff. Carrier will not be responsible for any penalties, late fees, or any other similar charges regardless if shown on Bills of Lading." The tariff went on to preclude Saia Motor's liability for "indirect, incidental, consequential, special punitive, or multiplied damages…."

Likewise, Saia Motor issued two slightly different bills of lading over the course of its shipments for RCP. During earlier shipments, the bills of lading provided, in part, "[t]he carrier shall be liable for interest on any claims not paid within 30 days and for attorney's fees and disbursements in connection with the collection thereof, and for consequential damage resulting from failure of delivery as herein specified." Subsequent bills of lading added that, "terms and conditions of this bill of lading supersede and take precedence over any conflicting terms and conditions contained by any prior agreement, other bill of lading, delivery receipt or freight documentation, and any tariff or service guide issued by the Carrier … are entered into pursuant to the waiver provisions of 49 U.S.C. § 14101(b)."

Over the course of many shipments, RCP incurred penalties imposed by its customers due to untimely, non-conforming, or damaged shipments. RCP made claims against Saia Motor for these shipments and debited the claimed amounts from the amount it owed according to Saia Motor's freight invoices. By September 2010, these claims factored in the tens of thousands of dollars.

After RCP began debiting Saia Motor's freight invoice charges and refusing to pay in full the freight charges Saia Motor assessed, Saia Motor canceled various discounts it had provided RCP in the course of their dealings, citing provisions in federal regulation as well as in its tariff which it claimed permitted such action. This resulted in an eighty-percent increase in the amount RCP owed Saia Motor for the shipments.

## II.  Procedural History

RCP filed suit against Saia Motor in October 2010 seeking actual and foreseeable consequential damages resulting from Saia Motor's failure to make timely and conforming shipments. Saia Motor answered and filed a counterclaim seeking recovery of the balance on its unpaid freight invoices.

After brief discovery, the parties filed cross-motions for summary judgment. RCP asserted that its bills of lading constituted the controlling contract in the case, permitting recovery of actual as well as consequential damages. Saia Motor asserted that its tariff controlled and expressly prohibited the assessment of consequential damages. It also argued that its tariff permitted the cancelation of discounts initially provided to RCP and that it was entitled to payment on the unpaid freight invoices as a matter of law.

In an August 26, 2013 order, the trial court granted partial summary judgment. The trial court held that RCP was not entitled to consequential damages because Saia Motor had successfully limited its liability for such damages pursuant to a provision in federal law referred to as the Carmack Amendment. The trial court further held that Saia Motor's published tariff controlled and that RCP could be charged with constructive notice of its contents. The trial court sustained only one of RCP's grounds for summary judgment: The tariff's provision for it notwithstanding, cancelation of discounts was "a severe penalty" and was "prima facie unreason-

able." Following the trial court's order on summary judgment, the measure of each party's damages was still in question, and the matter proceeded to a January 2014 bench trial.

As a result of the bench trial, and the respective damages the parties sought, the trial court awarded a net judgment in the amount of $37,417.09 to Saia Motor. In addition, the trial court awarded Saia Motor its attorneys' fees and costs. After Saia Motor submitted proof of these fees and costs, the trial court entered an order awarding $138,336.30 in attorneys' fees and $15,723.94 in costs. While RCP does not appeal the trial court's decision at trial concerning damages, it now appeals from the orders awarding Saia Motor partial summary judgment and attorneys' fees. Saia Motor appeals from the trial court's ruling concerning the cancelation of its freight charge discounts.

## Standard of Review and the Summary Judgment Standard

On appeal, RCP and Saia Motor each claim that the trial court erred in granting Saia Motor partial summary judgment on issues relating to the Carmack Amendment. The standard of review governing an appeal of a summary judgment is well settled. Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

"[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476,

480 (Ky.1991). In essence, for summary judgment to be proper, the movant must show that the adverse party cannot prevail under any circumstances. *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky.1985). Therefore, we will find summary judgment appropriate only "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [1] 56.03.

RCP also challenges the trial court's order awarding attorneys' fees and costs to Saia Motor. Where recovery of such fees and costs is permitted, either by contract or by statutory fiat, we review their award for an abuse of discretion. *King v. Grecco*, 111 S.W.3d 877, 883 (Ky. App.2002). Therefore, we will only reverse the trial court's award of fees and costs to Saia Motor if the award was in some way arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

## Analysis

This case presents us with one overarching legal issue which could well affect our analysis of all the others contained in this appeal: Whether the trial court properly applied the Carmack Amendment's provision for limiting a carrier's liability to Saia Motor's tariff and its various provisions concerning damages and discounts. By necessity, we resolve that matter first.

## I. Liability Under the Carmack Amendment

In 1906, Congress added the "Carmack Amendment" to the Interstate Commerce

---

**1.** Kentucky Rules of Civil Procedure.

Act. As the United States Supreme Court observed,

> [T]he statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.

*Missouri Pac. R. Co. v. Elmore and Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964)(internal quotations omitted.) The Amendment provides, more generally, the default position that a carrier is strictly liable for loss or damage of freight and that a carrier may not limit that liability unless the shipper has agreed otherwise in writing. *ABB, Inc. v. CSX Transp., Inc.,* 721 F.3d 135, 139 (4th Cir. 2013), citing 49 U.S.C.[2] § 11706(a), (c). A carrier may limit its liability through the use of tariffs—documents which provide terms such as the rates to be charged and the level of the carrier's liability for loss. To successfully limit their liability using such an agreement, carriers must satisfy four requirements famously, but not exclusively, prescribed in *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407 (7th Cir.1987). In *Hughes,* the Seventh Circuit held that carriers must show that they: 1) maintained a tariff within the guidelines of the Interstate Commerce Commission (ICC); [3] 2) gave the shipper a reasonable opportunity to choose between two or more levels of liability; 3) obtained the shipper's choice of liability; and 4) issued a receipt or bill of lading prior to moving the ship-

ment. *Id.* at 1415 (citation omitted). This appeal primarily concerns the first three of these requirements.

**A. RCP's Preservation of the Issue before the Trial Court**

Saia Motor alleges that RCP failed to raise application and satisfaction of the second element of the *Hughes* test before the trial court. We disagree.

As Kentucky's appellate courts are fond of saying, "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court. In other words, an appellant preserves for appellate preview only those issues fairly brought to the attention of the trial court." *Elery v. Commonwealth,* 368 S.W.3d 78, 97 (Ky.2012) (internal quotations and citations omitted). That is not what transpired in this case. Saia Motor argues that RCP raised only the third prong of the *Hughes* test before the trial court, hence it failed to preserve its argument on appeal regarding the second prong. Yet, the broader issue RCP brings before us is whether Saia Motor properly limited its liability pursuant to the Carmack Amendment and the *Hughes* test. The trial court had an extensive opportunity to consider and resolve that question. Therefore, RCP sufficiently preserved this issue for our consideration, and we shall take it up.

**B. Application of *Hughes* and the Carmack Amendment**

We turn to the substantive matters before us, the first of which concerns whether the trial court properly applied

---

**2.** United States Code.

**3.** With the deregulating Trucking Industry Reform Act of 1994 and the Interstate Commerce Commission Termination Act of 1995, Congress abolished the Interstate Commerce Commission. Hence, the first element of the

*Hughes* test was superseded by the requirement that carriers maintain their tariffs and to make them available (in writing or in electronic form) to shippers upon request. *See* 49 U.S.C. § 14706(c)(1)(B); *see also* 49 U.S.C. § 11101(b).

the *Hughes* test and correctly concluded that Saia Motor limited its liability pursuant to the Carmack Amendment. RCP contends that the trial court failed entirely to apply the *Hughes* test, and that this alone compels reversal of its grant of summary judgment. Saia Motor counters that the *Hughes* test was irrelevant to the trial court's analysis regarding the applicability of its tariff and the provision precluding liability for consequential damages.

Saia Motor urges an analysis and result similar to that which the federal District Court in Louisville applied in a 2010 case involving RCP. That case arose from a third party's assessment of late fees against RCP, who in turn sued the carrier for consequential damages only. The court pointed out that the liability provisions of the Carmack Amendment "apply only where the goods being shipped are lost or damaged." As the goods in that case were merely delivered late and no "actual loss or injury to the property" occurred, the Court concluded that the Carmack Amendment did not apply, the carrier's tariff controlled, and a *Hughes*[4] analysis was unnecessary to bar recovery of consequential damages under the terms of the tariff.

We must disagree, at least in part, with Saia Motor that *Hughes* is inapplicable based upon this precedent. The facts of RCP's 2010 case and the present one differ in one very simple but important instance: At least some of the goods Saia Motor carried in this case were damaged. There was actual loss for which RCP sought both actual and consequential damages. Therefore, the Carmack Amendment applies, at least concerning the actual damages RCP seeks, and a *Hughes* analysis is necessary. While we may ultimately conclude, as the

trial court did, that the tariff controls and that it precludes the recovery of consequential damages, we must first consider whether the trial court properly applied the *Hughes* test to the liability provisions of Saia Motor's tariff.

*Notice of the Tariff*

RCP takes exception with the trial court's conclusion on summary judgment that RCP had "constructive knowledge of the tariff" and contends that actual notice of its provisions was required. RCP presented testimony before the trial court purporting to show that its president never saw, and was unaware of, Saia Motor's tariff. Saia Motor countered this with an e-mail from RCP's shipping manager to its president informing the president of RCP's pricing agreement with Saia Motor and stating, in part, "[t]he tariff has been published and therefore we don't need a signed contract to ship...." These factual disputes notwithstanding, we must look to whether the trial court was correct that Saia Motor was entitled to judgment as a matter of *law* on this issue.

Prior to deregulation of the trucking industry and the abolition of the Interstate Commerce Commission in 1995, shippers were charged with constructive notice of a carrier's tariffs due to the requirement that carriers file their tariffs with the ICC. RCP contends that abolition of the ICC, and hence the filing requirement, burdened carriers with proving that shippers had actual knowledge of their tariffs. In support of this proposition, RCP cites to *ABB, Inc. v. CSX Transp., Inc.,* 721 F.3d 135, and *Tempel Steel Corp. v. Landstar Inway, Inc.,* 211 F.3d 1029 (7th Cir.2000). However, RCP's contention that these

---

4. The federal District Court actually cited to *Emerson Elec. Supply Co. v. Estes Express Lines Corp.,* 451 F.3d 179 (3d Cir.2006), a case which cites to and applies its sister circuit's analysis in *Hughes.*

cases expressly heightened the requisite level of notice is inaccurate.

In *ABB*, the Fourth Circuit's decision hinged not on a lack of actual notice, but on a lack of familiarity between the shipper and the carriers, as well as the tariff's failure to reference specifically the applicable rates and liability level. *See ABB*, at 143. The Court went so far as to say,

> a decision in favor of CSX would be required if [the tariff] had been referenced specifically in the [bill of lading], even if ABB had not actually been aware of the limitation of liability contained in that price list. In such a circumstance, the shipper reasonably would be charged with notice of the meaning of a precise, currently applicable term that the shipper included in the [bill of lading].

*Id.*

In *Tempel Steel*, the Seventh Circuit, citing its decision in *Hughes*, did state that "actual notice is necessary for a limitation of liability to be enforced." 211 F.3d at 1080. However, with all due respect to that Court, *Hughes* did not require actual notice of a carrier's tariff; it read the Carmack Amendment as requiring shippers to have *"reasonable* notice of the liability limitation[.]" 829 F.2d at 1419. (Emphasis added). Since the abolition of the ICC, other jurisdictions have read this "reasonable notice" provision to charge shippers with constructive notice of a carrier's tariff. *See Hollingsworth & Vose Co. v. A–P–A Transp. Corp.*, 158 F.3d 617, 619 (1st Cir.1998); *Siren Inc. v. Estes Express Lines*, 249 F.3d 1268, 1272 (11th Cir.2001); *Jackson v. Brook Ledge*, 991 F.Supp. 640, 646 (E.D.Ky.1997) ("Shippers are charged with notice of terms, conditions, and regulations contained in the tar-

iff schedule pertaining to a carrier's liability . . . .").

We are unconvinced that actual notice of a carrier's tariff is required to enforce its provisions. Nevertheless, there is evidence in the record, in the form of an e-mail and an affidavit, that RCP, an experienced shipper, was fully aware of Saia Motor's published tariff. The same record is devoid of evidence that Saia Motor refused to provide its tariff to RCP. These facts may well evince RCP's actual notice of Saia Motor's tariff. Nevertheless, RCP may be, at the very least, charged with constructive notice and held to the terms of the tariff in question.

*RCP's Opportunity to Choose Level of Liability*

The same "reasonable opportunity" provision requires that a carrier provide a shipper a fair opportunity to choose between levels of liability. *See Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 153 (6th Cir.2015),[5] citing *Emerson*, 451 F.3d at 187–88, and *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir.1998). From the information available to the shipper, and from the options the carrier is required to provide, the shipper must then "make a deliberate and well-informed choice." *Exel*, at 153, citing *Toledo Ticket*, at 442.

Saia Motor contends that RCP expressly agreed to the liability provisions in the tariff by 1) providing freight to Saia Motor after Saia had offered and established the discounted freight charges; and 2) by the express language of the bills of lading for these shipments which incorporated Saia Motor's tariff by reference. While we have held that the record reflects that RCP was certainly on notice of Saia Mo-

---

**5.** On November 16, 2015, RCP moved this Court for leave to cite this additional authority, which the Sixth Circuit rendered eleven days prior. At oral arguments, RCP provided copies of the case to the Court and to counsel for Saia Motor, who voiced no objection.

tor's tariff, it lacks evidence of any meaningful extension of a "reasonable opportunity" for RCP to choose between two or more levels of liability. In fact, the stark disagreement between the respective terms of the tariff and bills of lading demonstrates an absence of choice or agreement. At the very least, this presents a genuine issue of material fact regarding whether Saia Motor properly limited its liability under the Carmack Amendment and the *Hughes* test. Further proceedings are necessary.

## C. RCP's Claim for Consequential Damages

RCP next contends that genuine issues of material fact remain concerning its prayer for consequential damages resulting from what its representatives referred to as "severe and costly" penalties paid to third parties due to non-conforming deliveries. Saia Motor argues that its tariff expressly prohibited liability for such damages and that summary judgment was therefore appropriate.

Indeed, the liability provisions of the Carmack Amendment apply expressly and exclusively to liability for "actual loss or injury to property." While the bills of lading for the shipments in question did state that Saia Motor could be liable for consequential damages, the tariff expressly and unequivocally disclaimed Saia Motor's liability "regardless if shown on original Bills of Lading." These facts may well lean in Saia Motor's favor. However, our ruling concerning conformity with the *Hughes* test brings this and all other questions stemming from application of the tariff into question. On remand, the trial court's decision on the questions concerning the Carmack Amendment and whether Saia Motor's tariff controls must also inform its decision concerning consequential damages.

## II. Saia Motor's Counterclaim Regarding Freight Charges

The trial court's August 26, 2013 order sustained RCP's motion for summary judgment on a single issue: Saia Motor's cancelation of its discounts following RCP's failure to pay certain freight charges. The trial court concluded that Saia Motor's action to rescind its discounted freight charges constituted a "severe" and "prima facie unreasonable" penalty, and that the entire tariff, including Saia Motor's published and discounted rates, must apply. We must disagree that summary judgment was appropriate on this point.

Federal regulations provide two possible methods carriers may recover when a shipper has failed to pay freight charges:

(g)(1) Collection expense charges. Carriers may, by tariff rule, assess reasonable and certain liquidated damages for all costs incurred in the collection of overdue freight charges. Carriers may use one of two methods in their tariffs:

(i) The first method is to assess liquidated damages as a separate additional charge to the unpaid freight bill. In doing so, the tariff rule shall disclose the exact amount of the charges by stating either a dollar or specified percentage amount (or a combination of both) of the unpaid freight bill. The tariff shall further specify the time period (which shall at least allow for the authorized credit period) within which the shipper must pay to avoid such liquidated damages.

(ii) The second method is to require payment of the full, nondiscounted rate instead of the discounted rate otherwise applicable. The difference between the discount and the full rate constitutes a carrier's liquidated damages for its collection effort. Under this method the tariff shall identify

the discount rates that are subject to the condition precedent and which require the shipper to make payment by a date certain. The date certain may not be set to occur by the carrier until at least after the expiration of the carrier's authorized credit period.

49 C.F.R.[6] § 377.203(g)(1)(i)-(ii). Saia Motor asserts that its tariff followed the method prescribed in subsection (ii) and that the trial court erred in not enforcing that provision in the tariff and effectively disallowing its chosen method of collecting unpaid freight charges. The provision in Saia Motor's tariff to which it refers states:

ITEM 435

SECTION 2A—PAYMENT FAILURE

Failure to make payment freight charge to subject carrier for service performed as a common carrier by subject carriers, which subsequently results in legal action (such as collections) taken against the debtor, will be subject to the following:

1. Forfeiture of all discounts, allowances, commodity rates, brokerage agreements, incentives or any other rate reductions enjoyed by such debtor, if any, on all unpaid freight bills.

2. In addition to the provisions of Section 2 and above paragraph, debtor will be responsible for attorney fees and/or court cost associated with or as a result of any collection action.

3. Saia reserves the right to cancel all pricing provisions.

4. The failure to enforce the terms and conditions of this tariff on one [or] more occasions shall not be deemed a waiver of their applicability or enforceability in future transactions between the payor and Saia.

In addition to questions stemming from application of the tariff, RCP argues that forfeiture of the discounts according to the provisions of the tariff would constitute "an unenforceable penalty because they bear no reasonable relationship" to Saia Motor's claim of damages. As RCP notes, 49 C.F.R. § 377.203 itself requires a claim to recover such damages to be "reasonable and certain[.]" 49 C.F.R. § 377.203(g)(1).

Notwithstanding our decision to reverse and remand concerning Saia Motor's satisfaction of the *Hughes* test, a genuine issue of material fact remains regarding whether Saia Motor's proposed cancelation of discounts pursuant to its tariff constitutes a penalty or is merely part of the actual rates possible under the tariff. Uncertainty also remains as to whether the undiscounted freight charges, if imposed, would be "reasonable and certain." The trial court's analysis on this point was lacking. Specifically, the trial court's reliance upon the fairness and justness of the charges was insufficient, by itself, to justify its decision to enforce all the provisions of the tariff except that which allowed for cancelation of discounts.

We remand the matter to the trial court for a complete consideration of whether the tariff provision, if enforceable, imposes a "penalty" or whether the undiscounted charges are merely part of the actual rates charged to Saia Motor's customers. If the trial court determines the charges were merely rates altered pursuant to the method described in 49 C.F.R. § 377.203(g)(1)(ii), it must then determine whether the assessed damages were "reasonable and certain[.]"

**III. Award of Attorneys' Fees and Costs**

Both parties agreed in the various documents drafted and exchanged between

---

**6.** Code of Federal Regulations.

them that in the event of a dispute, the "prevailing party" would be liable to the other for attorneys' fees and costs. There is no question that the parties contracted away application of the general rule in Kentucky that "each party assumes responsibility for his or her own attorneys' fees." *Aetna Casualty and Surety Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (citation omitted).

Our reversal and remand of so many key issues no doubt calls into question who the "prevailing party" will be when the trial court resolves those issues and the remaining moving parts finally fall into place. Therefore, without comment as to its reasonableness, we must vacate the trial court's prior award and remand the matter of attorneys' fees and costs for final determination based upon an ultimate determination of the parties' respective liabilities and damages.

### Conclusion

For the reasons stated herein, we affirm in part, reverse in part, and remand that portion of the trial court's order of August 26, 2013, granting partial summary judgment in favor of Saia Motor. That portion of the same order granting summary judgment in favor of RCP on the question of Saia Motor's discounts on its freight charges is reversed and remanded to the trial court for further consideration of the issues we have raised. Finally, the trial court's post-trial, May 12, 2014 order awarding attorneys' fees and costs to Saia Motor is vacated and remanded.

ALL CONCUR.