RENDERED: DECEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1366-MR

STINLER, INC. APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v. HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
ACTION NO. 20-CI-00515

MALL ROAD INVESTORS, LTD. CO. APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND MᴄNEILL, JUDGES.

KAREM, JUDGE: Stinler, Inc. ("Stinler") appeals from orders of the Boone

Circuit Court granting summary judgment and awarding damages and attorney's

fees to Mall Road Investors, Ltd. Co. ("Mall Road"). Stinler leased property from

Mall Road to operate a sandwich shop. The trial court held that Stinler violated the

lease when it removed the HVAC unit and several fixtures upon vacating the

premises. On appeal, Stinler argues (1) that summary judgment was improper because the lease was ambiguous, and (2) that the amount of attorney's fees was excessive. Upon careful review, we affirm.

Mall Road owns a shopping center containing several commercial tenants. In 2009, Mall Road leased space in the center to Harper on a Roll, LLC ("Harper"), a Jimmy John's Gourmet Sandwiches franchisee, for a five-year term. On August 11, 2014, Harper on a Roll and Mall Road entered into a first amendment to the lease agreement, which extended the tenancy through September 30, 2019.

In 2017, Harper, with Mall Road's consent, assigned its lease to Stinler, which continued operating the Jimmy John's franchise. Stinler has been a Jimmy John's franchisee for over twenty-five years and owns approximately thirteen such restaurants in Illinois, Indiana, Ohio, and Kentucky. Mall Road and Stinler agree that the terms of the 2009 lease and the first amendment were incorporated into Stinler's assignment and govern their business relationship.

The lease contained the following provisions relating to the HVAC and fixtures in the shop:

Paragraph 2 provides in relevant part:

At or prior to expiration of the Lease Term, Tenant will return possession of the Shop to Landlord in broom clean condition with all of Tenant's furniture, fixtures, signage (with façade repaired) and inventory removed.

Paragraph 7 provides in part:

Landlord must assign any and all warranties associated with the equipment at the shop to the tenant, including heating, ventilating and air conditioning system which is to be a new non reconditioned unit. Tenant will maintain the Shop in good condition and repair (including any necessary replacements), including, interior and exterior doors, plate glass, windows, store front, all plumbing and sewage facilities serving only the Shop, all fixtures, heating, ventilating and air conditioning and electrical systems serving only the Shop, walls, floors and ceilings, meters serving the Shop and all installations made by Tenant, including repairs caused by illegal acts. . . . Tenant will enter into a maintenance contract for the heating, ventilating and air conditioning system providing for quarterly service inspections and necessary repairs.

Additionally, Exhibit B of the lease includes the following provisions relating to the HVAC and washrooms under a section entitled "DESCRIPTION OF LANDLORD'S WORK AND TENANT'S WORK":

**6. HEATING, VENTILATING AND COOLING**
The air conditioning will be installed on the basis of a minimum of one ton of air conditioning for every two hundred (200) square feet of interior Premises or as deemed sufficient HVAC.

Distribution consisting of double wall, insulated spiral duct will be provided. Exhaust and ventilation will be provided in accordance with local building codes. Combination heating and cooling unit will be installed on the roof.

**7. WASHROOMS**
Landlord will provide two ADA washrooms per current code, size and location to be designated by tenant. Washroom walls will be framed and drywalled to the

roof deck, taped sanded and ready for paint. All fixtures, doors, floor and wall finishes will be provided by landlord per Tenant's specifications and design.

In April 2019, Stinler paid for and installed a new HVAC system in the shop, at a cost of $10,900.

As we have noted, under the terms of the first amendment, the lease agreement was set to terminate on September 30, 2019. Stinler had the right to renew the lease by giving written notice by May 3, 2019. Stinler did not, however, renew the lease nor did it vacate the premises. Mall Road negotiated an agreement with Stinler and the new incoming tenant to give Stinler additional time to move out. When Stinler failed to do so, Mall Road filed a forcible detainer complaint in Boone District Court. Stinler and Mall Road reached a settlement of the case and on February 3, 2020, the district court entered an agreed order which provided in part that

> Defendant shall vacate the . . . Property . . . by 5 pm on Sunday, February 23, 2020. Defendant shall provide Plaintiff a walk-through of the Property at that time where all keys to the Property shall be returned to the Plaintiff. Defendant shall leave the Property in the condition as outlined in the lease between the parties.
>
> Defendant has agreed that all personal property, including coolers, ovens, racks, shelves, refrigerators, iceboxes, etc., will be removed from the premises, and Defendant will remove all signage for the Jimmy John's brand, and will leave the property in broom swept condition on the day they move out.

> If Defendant fails to vacate the Property as outlined above, Defendant shall be liable to Plaintiff for reasonable damages arising therefrom.

After the entry of the agreed order, Stinler informed Mall Road that it wanted to remove the HVAC unit from the property. Mall Road communicated with Stinler's counsel that the HVAC unit belonged to Mall Road and was not to be removed.

After Stinler vacated the building, Mall Road discovered that Stinler had removed the HVAC unit, as well as two bathroom doors, two paper towel holders, two toilet paper holders, and the bathroom sconces. Stinler also refused to pay outstanding rent, water, or common area maintenance ("CAM") charges.

Mall Road filed suit against Stinler, alleging breach of contract and conversion of its property and seeking compensatory damages, punitive damages, and attorney's fees. Following a hearing, the trial court held that Stinler's removal of the HVAC and fixtures constituted not only breach of contract but conversion and granted summary judgment to Mall Road. After a hearing on damages, the trial court entered a final judgment awarding Mall Road $21,793.70 in damages, $433.27 in costs, and $35,999.95 in attorney's fees, plus post-judgment interest. This appeal by Stinler followed.

## STANDARD OF REVIEW

### i. Summary judgment

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure ("CR") 56.03. The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. "Not every issue of fact or conflicting inference presents a genuine issue of material fact that requires denial of a summary judgment motion." *Grass v. Akins*, 368 S.W.3d 150, 153 (Ky. App. 2012). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

### ii. Interpretation of a contract

This case involves the interpretation of the lease and the terms of the agreed order memorializing the settlement in the forcible detainer proceedings. "A

lease is a contract for the possession and profits of lands and tenements on the one side, and the recompense of rent or property on the other[.]" *Neighborhood Investments, LLC v. Kentucky Farm Bureau Mut. Ins. Co.*, 430 S.W.3d 248, 251 (Ky. App. 2014) (citation omitted). "[S]ettlement agreements are a type of contract and therefore are governed by contract law[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003).

"The interpretation of a contract is a question of law. In the absence of ambiguity a written instrument will be enforced strictly according to its terms. Courts will interpret the contract terms by assigning language to its ordinary meaning without resort to extrinsic evidence." *Stowe v. Realco Limited Liability Company*, 551 S.W.3d 462, 465-66 (Ky. App. 2018) (internal quotation marks and citations omitted). On the other hand, "[w]here a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (internal quotation marks omitted). If a contract is determined to be ambiguous, the ambiguity is construed against the drafter. *Phoenix American Administrators, LLC v. Lee*, 670 S.W.3d 832, 840 (Ky. 2023) (citation omitted). Because the construction and interpretation of a lease are questions of law, our standard of review is *de novo. Community Trust Bancorp, Inc. v. Mussetter*, 242 S.W.3d 690,

692 (Ky. App. 2007) (citation omitted). "However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder." *Cantrell*, 94 S.W.3d at 385.

## ANALYSIS

**i. The lease and settlement agreement were not ambiguous**

Stinler argues that the trial court erred in ruling that the lease and agreed order were unambiguous and in construing them against Stinler. Stinler contends that the HVAC was an especially powerful unit required by Jimmy John's and the bathroom fixtures were trade fixtures also mandated by Jimmy John's. Because the lease is silent about these types of items, Stinler argues that it is ambiguous and therefore the trial court erred in ruling as a matter of law that the HVAC and fixtures belong to Mall Road. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694-95 (Ky. 2016) (citation omitted).

**ii. The HVAC**

The lease specifies under Section 6 of Exhibit B, as set forth above, that the landlord is required to install the HVAC. Paragraph 7 requires the landlord to assign the warranty on the unit, which must be new, to the tenant. The tenant is required to maintain the HVAC in good condition and repair, including necessary

-8-

replacements. When Stinler assumed the lease from Harper, a unit was in place which presumably met Jimmy John's standards as Stinler continued to do business without complaint for two years before replacing it.

There is no ambiguity in the lease regarding the HVAC. The lease does not convey ownership of the HVAC to the tenant, nor does it permit the tenant to remove the HVAC upon expiration of the lease. As the trial court aptly observed in construing Paragraph 7 of the lease,

> According to [Stinler's] argument, the fact that it was required to maintain – even replace – the HVAC unit constitutes ownership. If that were so, then [Stinler] would also own the plate glass, windows, store front, all plumbing and sewage facilities, and electrical systems that served only the shop. Clearly, that is not the case. The lease imposes an obligation on tenant to maintain these fixtures because they belong to the landlord. It does not convey ownership of these fixtures to tenant.

## ii. The fixtures

Stinler argues that the paper towel and toilet paper holders, bathroom doors, and sconces it removed were trade fixtures mandated by Jimmy John's and the lease was unclear regarding the ownership of these fixtures. As evidence for this alleged ambiguity, Stinler points to the reference of fixtures in Paragraph 2, which requires the tenant to remove fixtures upon the expiration of the lease but does not explain which fixtures are included in this category.

"Trade fixture" is defined as "property which a tenant has placed on rented real estate to advance the business for which it is leased[.]" *Scanlon v.*

*Scanlon*, 545 S.W.3d 311, 316 (Ky. App. 2018) (citation omitted). "While an ordinary fixture is considered a part of the real property to which it is attached, trade fixtures are considered personal property and may be removed when vacating real property." *Id.* To determine whether an item is a trade fixture, we inquire "whether the lessee installed the item with the intent that it be used to aid him in carrying on his trade or business on the premises." *Id.* (internal quotation marks omitted).

Under the terms of Exhibit B of the lease, the landlord, Mall Road, was required to provide two washrooms as well as fixtures, doors, floor, and wall finishes per the tenant's specifications and design. Stinler does not dispute that Mall Road installed the Jimmy John's branded fixtures in accordance with its duties under Exhibit B of the lease. Therefore, because the fixtures were not installed by Stinler, they do not meet the definition of a trade fixture and they are not Stinler's personal property.

Stinler points to the affidavit of its principal, Kenneth Butler, in which he claims that each of the disputed items was mandated and selected by Jimmy John's in accordance with its particular branding or specifications and installed on the premises in connection with and to advance the Jimmy John's business operated there initially by Harper and later by Stinler. Stinler contends that Harper "knew" at the time it entered the lease that Jimmy John's would dictate and ultimately require removal of these branded items. If the removal of the branded

-10-

items was required by Jimmy John's, Stinler was free to do so but would also have to replace the items or reimburse Mall Road for these fixtures.

### iii. Rent, water, and CAM charges

Stinler further argues that it understood it would not be responsible for charges for rent, CAM, and water charges for the period during which it occupied the shop after the termination of the lease. It claims the parties agreed to this arrangement in their discussions during the resolution of the forcible detainer proceedings. As evidence for this, Stinler relies on the statement in Butler's affidavit that parties "reached an oral agreement on February 3, 2020, that Stinler would owe no rent or other monetary amounts for the month of February 2020, as part of Stinler's agreement to cease further legal challenge to its eviction." This purported agreement was not memorialized in the settlement agreement. Butler's claim that there was such an oral agreement, without any other evidence, is simply not sufficient to read such an alteration of the lease into the settlement agreement. "A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007).

### iv. The attorney's fees

The trial court awarded Mall Road $9,609.70 for liquidated damages, consisting of the rent, CAM, and other charges under the lease; $12,184 for the property found to be converted; and $35,999.95 in attorney's fees. The attorney's

-11-

fees were awarded in accordance with the express terms of the lease, which states: "The prevailing party in any litigation or other proceedings to enforce such party's rights under the Lease will be entitled in such litigation or proceeding to an award of the costs of such litigation or proceeding, including attorney's fees and expenses."

Stinler argues that the amount of attorney's fees, which is more than one-and-a-half times the total amount of compensatory damages, is not reasonable in the context of a commercial lease dispute. It argues that it did not damage the premises or leave them in disrepair; it removed the HVAC professionally and without damage; and it left the space clean and swept. It further argues that a portion of the damages sought, but not ultimately recovered by Mall Road, included costs to repair and replace alleged damage to the premises. Stinler argues that these speculative damages improperly inflated the amount of attorney's fees.

Mall Road argues that Stinler has provided no authority showing that the ratio of fees to damages was unreasonable or that recovering less than the full amount of damages sought warrants a reduction in attorney's fees.

When, as in this case, recovery of attorney's fees is permitted by contract, the amount of the award is reviewed for an abuse of discretion. *Royal Consumer Products, LLC v. Saia Motor Freight Line, Inc.*, 520 S.W.3d 753, 757 (Ky. App. 2016) (citation omitted). "What constitutes a reasonable [attorney's] fee is within the discretion of the court. . . . An abuse of discretion occurs if the

-12-

court's ruling is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Dawahare v. Cabinet for Health and Family Services*, 662 S.W.3d 745, 747 (Ky. App. 2023) (internal quotation marks and citations omitted).

The trial court acknowledged that the amount of damages is a factor in determining the amount of attorney's fees, but also noted that

> Plaintiffs had to expend attorney fees wholly separate from the damages sought in this case. Agreements were reached to extend the date for Defendant to vacate. Then, when Defendant failed to do so, Plaintiff had to file a forcible detainer action and litigate in District Court to retake the premises. Consequently, the amount of attorney fees is not unreasonable.

The trial court appropriately and carefully considered the overall history of the case, including the increase in the cost of the proceedings attributable to Stinler's failure to timely vacate the premises, in determining the amount of attorney's fees. The trial court rejected Stinler's argument that the fees were inflated because two attorneys worked on the case for Mall Road by pointing out that because the associate attorney billed at a lower rate, employing two attorneys ultimately resulted in lower fees. The trial court also pointed out that Stinler had been unable to identify any duplication of work or charges.

Stinler further contends that the attorney's fees were improperly calculated on damages that were speculative and legally unrecoverable. Mall Road made claims for the cost of repairing Stinler's alleged damage to the shop and replacing the items removed by Stinler. Stinler points to evidence presented at the

-13-

damages hearing that Mall Road had not actually repaired much of the damage or replaced many of the items. This was due in part to the fact that the new tenant, EyeMart, was undertaking material renovations to convert the premises to an eye doctor's office. Mall Road argued that the risk remained that EyeMart would seek to recover the cost of the repairs from Mall Road or would remove the fixtures it had installed when its tenancy ended. In other words, Mall Road still had potential liability. In its judgment, the trial court rejected this argument, stating:

> Defendant knowingly removed fixtures from the premises he leased belonging to the Plaintiff. Inasmuch as the Court has found that this constituted conversion, Defendant must pay the value of the items converted. Based upon testimony at the hearing, it appears that Plaintiff did not suffer financial injury from the removal of those fixtures because the subsequent tenant provided other materials during the build-out. Consequently, the damages proposed by Plaintiff for new replacement and installation costs would not be appropriate. Rather, the Court accepts Defendant's evidence as to the total value of those items being $12,184 ($10,900 for the HVAC unit, $800 for two bathroom doors, $102 for two toilet paper holders, and $382 for two paper towel holders). Further, because the evidence shows Plaintiff's new tenant renovated the space, and had placed a new sign in the same place as that removed by Defendant, the Court finds no damages for repair would be appropriate.

Although the trial court did not grant damages for repair and replacement costs, it did not make a finding that Mall Road's claims for these items were frivolous or improper. There is no indication that Mall Road's attorneys inflated their fees by knowingly pursuing meritless claims. It is not the

place of this Court to second-guess the professional judgment of counsel in deciding which claims to pursue in the course of litigation.

The trial court's award of attorney's fees was not an abuse of discretion.  It was firmly founded on the evidence presented and it was neither arbitrary, unreasonable, unfair, nor unsupported by sound legal principles.

## **CONCLUSION**

For the foregoing reasons, the Boone Circuit Court's order of October 20, 2022, granting summary judgment to Mall Road and its order of June 3, 2022, awarding damages, attorney's fees, costs, and post-judgment interest are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel A. Hunt
Covington, Kentucky

BRIEF FOR APPELLEE:

Jason P. Renzelmann
Louisville, Kentucky

Michael E. Nitardy
Florence, Kentucky

Nathaniel L. Truitt
Cincinnati, Ohio