NEIGHBORHOOD INVESTMENTS, LLC, Appellant

v.

KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.

No. 2013–CA–000375–MR.

Court of Appeals of Kentucky.

March 28, 2014.

Randall L. Wright St., Matthews, KY, for Appellant.

Valerie W. Herbert, Louisville, KY, for Appellee.

Before ACREE, Chief Judge; JONES and MOORE, Judges.

## OPINION

MOORE, Judge:

Neighborhood Investments, LLC ("Neighborhood"), leased a house located at 403 N. 42nd Street in Louisville to Kenneth McCormick. During the term of the lease, McCormick was arrested for manufacturing methamphetamine in the house. Also, it was determined that the byproducts of McCormick's methamphet-amine production had contaminated the house and rendered it uninhabitable. Accordingly, the authorities have prohibited Neighborhood from re-leasing the house to any other tenant until the premises have been decontaminated.

Neighborhood filed a breach of contract and declaratory action in Jefferson Circuit Court against Kentucky Farm Bureau Mutual Insurance Company ("Farm Bureau") for a determination of whether the terms of an insurance policy it had purchased from Farm Bureau covered these substantial decontamination expenses; Farm Bureau argued that the policy unambiguously excluded such coverage. The circuit court granted summary judgment in favor of Farm Bureau. Neighborhood now appeals. We affirm.

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is proper where the movant shows that the adverse party cannot prevail under any circumstances." *Id.* at 479 (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)).

On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of

law. *Scifres v. Kraft,* 916 S.W.2d 779 (Ky. App.1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's ·decision. *Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378 (Ky.1992). Our review is *de novo.* Likewise, the issues in this case involve the interpretation and meaning of terms in a contract. The interpretation of a contract or statute is a question of law for the courts and is subject to *de novo* review. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 647 (Ky.2007).

■ As indicated, the circuit court found that an exclusion within the Farm Bureau policy disposed of Neighborhood's claim of coverage. In relevant part, the exclusion provides:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

In insurance parlance, this type of provision is generally known as a "criminal acts" exclusion. From a plain reading, three requirements must be met in order to trigger this exclusion: 1) a loss 2) caused by a dishonest or criminal act and 3) committed by "anyone" Neighborhood "entrust[ed]" with "the property for any purpose." Neighborhood does not contest the ·validity of this provision; moreover, the parties agree that the Farm Bureau policy would define the contamination caused by McCormick's methamphetamine production as a "loss," and that McCormick's methamphetamine production constituted a "criminal act." The only issue in this matter is whether McCormick qualified as "anyone" Neighborhood "entrust[ed]" with "the property for any purpose."

In this regard, the sole argument Neighborhood offered at the circuit court level, as it appeared in its response to Farm Bureau's motion for summary judgment, was the following:

Counsel for [Farm Bureau] misunderstands the difference between leasing and entrusting. A lease is not entrusting real property to a tenant. A lease is the exchange of most, if not all, of the rights associated with ownership of a parcel of real property for a period of time. While no Kentucky court has defined a lease, the Supreme Court of Virginia has in *Rosel Clark, et al. v. Sid Harry,* [182 Va. 410] 29 S.E.2d 231, 233 (Va.1944):

"A lease is a contract for the possession and profits of lands and tenements on the one side, and the recompense of rent or property on the other; or, in other words, a conveyance to a person for life, years, or at will, in consideration of a return of rent or other recompense." A lease is, as we there pointed out, "an estate

for life, for years, or for some lesser term." One who occupies or is in possession of the premises of another under a lease is a tenant.

Rick [the managing member of Neighborhood] did not entrust the demised premises to McCormick, his LLC leased it to McCormick. The lease called for no illegal activity and specifically mentions that drug trafficking will be reported to law enforcement. (Lease attached. See 19. Misc. Provisions (h)) Short of this requirement, what could he, as landlord, do?

Stated differently, Neighborhood contended below that the word "lease," used as a legal term of art, is not synonymous with the word "entrust."

Notably absent from Neighborhood's argument or the Farm Bureau policy itself, however, is any attempt to define the word "entrust." Neighborhood's argument also overlooked that words used in contracts are not given legal or technical meaning; rather, they are defined by the contract itself, or, absent that, by the usage of the average man and as they would be read and understood by him. *Kentucky Ass'n of Counties All Lines Fund Trust v.*

*McClendon,* 157 S.W.3d 626, 630 (Ky.2005). Therefore, Neighborhood's argument misconstrued the central issue presented in this case, *i.e.,* whether Neighborhood "entrusted" McCormick with its property within the common and ordinary meaning of *that* word.

■ The parties have not cited any Kentucky case law on this subject, and we have found none. However, the common and ordinary meaning of "entrust" found in Merriam-Webster's Collegiate Dictionary (11th ed.2005), page 417, is "to confer a trust on" or "to commit to another with confidence." Black's Law Dictionary (7th ed.1999), page 554, defines "entrust" as "To give (a person) the responsibility for something, usu. after establishing a confidential relationship." And, utilizing these definitions (or comparable definitions from a variety of other dictionaries), several courts from varying jurisdictions have interpreted what "entrust" means as used within the context of criminal acts exclusions substantially similar to the one at bar. Their interpretations are in harmony with the following language from *Imperial Ins. Co. v. Ellington,* 498 S.W.2d 368, 372 (Tex.Civ.App.1973): [1]

---

1. *See also Atlantic Balloon & Novelty Corp. v. American Motorists Ins. Co.,* 62 A.D.3d 920, 923, 880 N.Y.S.2d 112, 115 (2009) (agreement to take merchandise on consignment in order to auction it qualified as an "entrustment" within the meaning of criminal acts exclusion) (*abrogated on other grounds* ); *Balogh v. Pennsylvania Millers Mut. Fire Ins. Co.,* 307 F.2d 894, 896 (5th Cir.1962); *Abrams v. Great American Ins. Co.,* 269 N.Y. 90, 92, 199 N.E. 15, 16 (1935):

When the word 'entrusted' appears in the contract the parties must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient. The controlling element is the design of the owner rather than the motive of the one who obtained posses-

sion. Because plaintiff was deceived and his confidence was abused, he *entrusted* his property to a thief.

*Van Sumner, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 74 N.C.App. 654, 659, 329 S.E.2d 701, 704–05 (1985):

[A] fraud may be practiced by the very person to whom the owner intends to entrust his property for an expressed purpose. The intent of the policy exclusion is to exclude coverage for such misplaced confidence. We believe that a determinative factor as to the existence of an entrustment is whether the person in whom the owner intended to repose confidence by delivery of the property for an expressed purpose is the same person to whom the property was actually transferred. If the answer is "Yes," then the owner entrusted the proper-

The word "entrusted," as used in the exclusionary provision, conveys the idea of the delivery or surrender of possession of property by one to another with a certain confidence regarding the other's care, use or disposal of the property.

. . . .

"Entrustment" clearly suggests the existence of a consensual bailment situation where the person delivering the property expects the person to whom possession is delivered to use the property for the purpose intended by the owner and stated by the recipient.

*Id.* at 372 (internal citations omitted).

We adopt the meaning of "entrusted" stated above. With that in mind, Neighborhood certainly delivered and surrendered possession of its house located at 403 N. 42nd Street in Louisville to McCormick. Neighborhood acknowledged in its argument below (and in the terms of its written lease agreement with McCormick) that in doing so it expected McCormick would not use the house for any kind of criminal enterprise, much less any kind of criminal enterprise that would render the house uninhabitable. Therefore, we conclude that within the common and ordinary meaning of the word, Neighborhood "entrusted" its house to McCormick. Our conclusion is further bolstered by *Vision Financial Group, Inc. v. Midwest Family Mut. Ins. Co.,* 355 F.3d 640, 643 (7th Cir. 2004), which examined exactly the same criminal acts exclusion noted above and determined that the word "entrusted" clearly encompasses a lessee-lessor relationship.

Neighborhood raises two additional arguments on appeal: 1) by operation of the doctrine of *ejusdem generis,* the term "anyone," as used in the language of the criminal acts exclusion, should not be interpreted to encompass McCormick; and 2) the word "entrust," when used in a criminal acts exclusion, applies to personal property rather than something along the lines of a house.

█ Because Neighborhood did not raise either of these arguments below, it cannot serve as a basis for reversing the circuit court's judgment. *Healthwise of Kentucky, Ltd. v. Anglin,* 956 S.W.2d 213, 217 (Ky.1997).

█ Furthermore, both of these arguments are meritless. As to Neighborhood's first argument, the doctrine of *ejusdem generis* provides that broad and comprehensive expressions in a writing, "such as, 'and all others,' or 'any others,' are usually to be restricted to persons or things of the same kind or class with those specifically named in the *preceding* words." *City of Lexington v. Edgerton,* 289 Ky. 815, 159 S.W.2d 1015, 1017 (1941). However, *ejusdem generis* is a rule of construction, not of substantive law, and it is not to be applied if the intention from the writing is clear. *Id.* Here, Neighborhood does not cite any authority holding that broad use of the word "anyone" is ambiguous because it fails to specify each and every person to whom it could apply. This is unsurprising because so holding would defeat the purpose and accepted practice of drafting exclusions in broad terms. Contrary to what Neighborhood contends, we find no ambiguity surrounding the word "anyone." As a consequence, the doctrine of *ejusdem generis* is inapplicable.[2]

---

ty, even though the recipient may have gained the owner's confidence by fraud.

**2.** One sentence in Neighborhood's brief also refers to the "doctrine of reasonable expectations." To the extent that Neighborhood has

As to its second argument, Neighborhood cites no authority supporting that the word "entrust," when used in a criminal acts exclusion, can only apply to personal property rather than something along the lines of a house. Moreover, this argument is entirely defeated by the unambiguous language of Neighborhood's policy with Farm Bureau, which defines the "property" covered to include, among other things:

a. Building, meaning the building or structure described in the Declarations[ [3] ], including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment[.]

In short, Neighborhood has not identified any error that would warrant reversing the Jefferson Circuit Court's judgment in favor of Farm Bureau. Therefore, we affirm.

ALL CONCUR.

attempted to argue that this doctrine would also apply, however, Neighborhood is incorrect. Neighborhood has failed to identify any ambiguity relating to the exclusion at issue, and, like the doctrine of *ejusdem generis,* the doctrine of reasonable expectations also has no application where no ambiguity exists in the policy language. *True v. Raines,* 99 S.W.3d 439, 443 (Ky.2003).

**3.** As the entirety of this opinion would imply, the "structure described in the Declarations" is Neighborhood's one-family dwelling located at "403 N. 42nd St., Louisville."