# Third District Court of Appeal

## State of Florida

Opinion filed September 7, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1987
Lower Tribunal No. 12-36648
_____

**Grover Commercial Enterprises, Inc., etc.,**
Appellant,

vs.

**Aspen Insurance UK, Ltd., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Victoria S. Sigler, Judge.

Marin, Eljaiek & Lopez, P.L., and Anthony M. Lopez and David Garcia; Easley Appellate Practice, PLLC, and Dorothy F. Easley, for appellant.

Berk, Merchant & Sims, PLC, and William S. Berk, Carol C. Berk, and Andrew J. Chan, for appellee Aspen Insurance UK, Ltd.


Before LAGOA, SALTER, and FERNANDEZ, JJ.

LAGOA, J.

Appellant, Grover Commercial Enterprises, Inc. ("Grover"), appeals from an order of final summary judgment entered in favor of Appellee, Aspen Insurance UK, LTD. ("Aspen"). Because we find that the trial court did not err in concluding that the "entrustment" exclusion provision (the "Entrustment Exclusion") in Grover's commercial insurance policy precludes coverage for the company's loss, we affirm.

I.      FACTUAL & PROCEDURAL BACKGROUND

Grover owns a commercial property located in Coconut Grove, Florida. Aspen insured Grover under a commercial insurance policy (the "Policy") that covered risks of loss or damage to Grover's real property and business personal property. The Policy contained an Entrustment Exclusion that excluded from coverage loss or damage resulting from any "[d]ishonest or criminal act by you . . . or anyone to whom you entrust the property for any purpose."

After purchasing the Policy, Grover leased the insured premises to Carma, LLC ("Carma"), for the purpose of operating a restaurant known as "The Knife." Grover also leased to Carma certain business personal property located on the premises as itemized in the lease agreement (the "Lease"). Pursuant to the Lease, Carma would be in complete and exclusive possession of all leased property upon commencement of the lease term, and upon termination of the Lease would return the real and business personal property to Grover.

While vacating the leased premises, Carma removed most of the business personal property belonging to Grover, and damaged the real property in the process. Upon later inspection, Grover's representative discovered that all of the items itemized in the Lease were missing. Grover filed a claim with Aspen for the damage, advising Aspen that Grover had sustained a loss due to Carma's "theft" and "vandalism." Following a full investigation, Aspen denied Grover's claim, citing the Entrustment Exclusion. Aspen contended that Carma's actions constituted dishonest or criminal activity by someone to whom Grover had entrusted the property.

On September 17, 2012, Grover brought an action against Aspen for breach of contract. Both parties filed summary judgment motions. On July 18, 2014, the trial court entered an order denying Grover's motion for summary judgment, and final judgment was entered in favor of Aspen on September 17, 2014.

On appeal, Grover argues that Aspen was not entitled to summary judgment because the Policy's Entrustment Exclusion, as drafted by Aspen, is ambiguous as to whether "leasing" property to a tenant is distinct from "entrusting" property in general. Specifically, Grover asserts that the Policy's use of "entrustment" does not encompass a landlord-tenant relationship, as the term "tenant" was not specifically included in the Entrustment Exclusion. In response, Aspen asserts that it is not liable to Grover for any relevant loss because the Lease is a manifestation of the "entrustment" of commercial property from a landlord (Grover) to a tenant

3

(Carma), and therefore Carma's removal of Grover's business personal property and damage to Grover's real property were criminal acts not covered under the Policy.

II.    ANALYSIS

There is no dispute that Carma stole business personal property and damaged Grover's real property while vacating the insured premises. While the Policy insures Grover for the loss of or damage to real and business personal property and provides that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance," the Policy also contains the following Entrustment Exclusion:

> We will not pay for loss or damage caused by or resulting from any of the following:
>     . . . .
>
> h.  Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives *or anyone to whom you entrust the property for any purpose*:
>
> (1) Acting alone or in collusion with others; or
>
> (2)  Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

(emphasis added).  The sole question before this Court is whether Grover "entrusted" the insured property to Carma.

4

Insurance contracts are construed "in accordance with the plain language of the policy." Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2005); see also Taurus Holdings, Inc. v. U. S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). The terms of an insurance policy are understood in their ordinary sense, and are to be read in a reasonable, non-technical way. See Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 736 (Fla. 2002). Thus, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, 913 So. 2d at 532 (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

Grover urges us to apply the principle of *ejusdem generis* to our construction of the policy. The principle of construction known as e*jusdem generis*, however, is resorted to only when we must interpret policy language that is ambiguous. See, e.g., Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1336 (S.D. Fla. 2006); accord Jacobo v. Bd. of Trs. of the Miami Police, 788 So. 2d 362, 364 (Fla. 3d DCA 2001). A policy term is not ambiguous "simply because it is complex or requires analysis," Garcia v. Federal Ins. Co., 969 So. 2d 288, 291 (Fla. 2007), or because the relevant language is not defined in the policy. See Swire Pac., 845 So. 2d at 166; accord Old Dominion Ins. Co. v. Elysee, Inc., 601 So. 2d 1243, 1245 (Fla. 1st DCA 1992). Absent ambiguity, the court's role is to apply the plain language of the policy, as the best indicator of the parties' intent, and "[w]e cannot

5

place limitations upon the plain language of a policy provision simply because we may think it should have been written that way." Taurus Holdings, 913 So. 2d at 538 (quoting Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139 (Fla. 1998)).

The parties do not dispute that Carma took Grover's business personal property and damaged Grover's real property. Aspen therefore bore the burden to establish, under the rules of construction discussed above, that Grover's loss was excluded from coverage. Castillo v. State Farm Fla. Ins. Co., 971 So. 2d 820, 824 (Fla. 3d DCA 2007) ("Once the insured establishes a loss apparently within the terms of an all-risk policy, the burden shifts to the insurer to prove that the loss arose from a cause which is excepted." (quoting B & S Assocs., Inc. v. Indem. Cas. & Prop., Ltd., 641 So. 2d 436, 437 (Fla. 4th DCA 1994))).

Neither the Policy nor Florida's insurance code define the word "entrust," and so we must look to the word's plain meaning, i.e., the word's accepted and ordinary meaning. See, e.g., Garcia, 969 So. 2d at 291-92. "Entrust" is defined as "'to confer a trust on," or "to commit to another with confidence.'" Neighborhood Invs., LLC v. Kentucky Farm Bureau Mut. Ins. Co., 430 S.W.3d 248, 253-54 (Ky. Ct. App. 2014) (quoting Merriam-Webster Collegiate Dictionary (11th ed. 2005)); see also F.D. Stella Prods., Co. v. Gen. Star Indem. Co., No. 03 C 5151, 2005 U.S. Dist. LEXIS 32793, at *13-14 (N.D. Ill. Dec. 12, 2005) (quoting definition of "entrust" from Webster's Third New International Dictionary as "1. to confer trust

upon; deliver something to (another) in trust. 2. to commit or surrender to another with a certain confidence regarding his care, use or disposal of"). We do not find the term "entrust" to be ambiguous, and based on how an ordinary reader would understand the plain, non-technical meaning of "entrust," we find that the Entrustment Exclusion included the Grover-Carma relationship. Pursuant to the terms of the Lease, Grover surrendered possession of its real and business personal property to Carma. Grover did so with confidence that Carma would use the property in accordance with the terms of the Lease and would not damage, steal, or dispose of Grover's property in violation of the Lease. We conclude that under the plain meaning of the term "entrust," Grover entrusted its property to Carma.

Our conclusion is consistent with decisions from courts in other jurisdictions that have considered identical or substantially similar entrustment exclusions and have concluded that their language includes tenants and lessees within their scope. See Bita Trading, Inc. v. Nationwide Mut. Ins. Co., No. 13 CV 1548, 2015 U.S. Dist. LEXIS 13427, at *18 (S.D. Cal. Feb. 3, 2015) (granting summary judgment to insurer under identical entrustment exclusion, noting that under California law similar entrustment exclusions have "been found to be unambiguous as a matter of law and specifically applicable to lessees") (quoting Su v. New Century Ins. Servs., Inc., No. CV 12-03894, 2013 WL 5775160, at *4 (C.D. Cal. Oct. 25, 2013)); Neighborhood Invs., 430 S.W.3d at 253-54 (affirming summary judgment in favor of insurer after concluding that, as a matter of law, identical entrustment

7

exclusion is unambiguous and applies to tenants); <u>Lexington Park Realty, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 120 A.D.3d 413, 414 (N.Y. App. 2014) (affirming summary judgment in favor of insurer based on substantially similar entrustment exclusion because, *inter alia*, a "property may be entrusted to another under a triple net lease agreement," and therefore applies to tenants).

Grover argues that Florida law distinguishes between entrustment and leasing, relying on the following exclusionary language in the particular insurance contract at issue in <u>Kapner v. State Farm Insurance Co.</u>, 558 So. 2d 186, 186 (Fla. 4th DCA 1990): "We do not insure loss which is a result of . . . infidelity of any person to whom the insured property is entrusted *or* rented." (emphasis added). Grover focuses on the <u>Kapner</u> policy language's use of "or" to support its argument that the Lease does not fall within the Entrustment Exclusion here. We are unpersuaded for a number of reasons.

First, the policy language in <u>Kapner</u> is materially different from the Entrustment Exclusion at issue here, as well as the entrustment exclusions at issue in <u>Bita Trading</u>, <u>Neighborhood Investments</u>, and <u>Lexington Park Realty</u>. Thus, even if the exclusionary language in <u>Kapner</u> created a distinction between entrustment and leasing for purposes of the contract between the Kapners and their insurer, that distinction cannot be imported into the Policy language between Grover and Aspen.

8

Second, the meaning and scope of the word entrust and its purported distinction from leasing was not at issue in <u>Kapner</u>, nor was it even discussed in *dicta*. The only question before the court in <u>Kapner</u> was whether the ongoing business relationship between the insureds and the fraudfeasor meant that the insureds had entrusted their boat to the fraudfeasor. The court in <u>Kapner</u> concluded that the Kapners' ongoing relationship did constitute "entrustment," and that the exclusionary language in their policy barred coverage for the fraudfeasor's act. The court in <u>Kapner</u> was not asked to and therefore did not have the opportunity or need to opine on whether the term "entrust" includes the landlord-tenant relationship. The <u>Kapner</u> court's mere quotation of the particular policy language without any application to the issue before the Court here does not create legal precedent in Grover's favor. Grover puts too much weight on policy language that is materially different from the Policy's Entrustment Exclusion here and that was not subject to our sister court's analysis in any way relevant to the issue presented by this case.

III.   <u>CONCLUSION</u>

Accordingly, we hold that the Policy's Entrustment Exclusion applied to Carma's actions as Grover's tenant. The trial court's order granting final summary judgment in favor of Aspen is therefore affirmed.

AFFIRMED.

9