# Third District Court of Appeal

## State of Florida

Opinion filed May 11, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-0671
Lower Tribunal No. 20-10334
_____

## Commodore, Inc. d/b/a GreenStreet Café, Inc.,
Appellant,

vs.

## Certain Underwriters at Lloyd's London, etc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Reed Smith LLP and R. Hugh Lumpkin and Christopher T. Kuleba, for appellant.

White & Case LLP and Raoul G. Cantero and Zachary B. Dickens, for appellees.

Angelo I. Amador (Washington, DC); Jenner & Block LLP and Gabriel K. Gillett (Chicago, IL); Samantha H. Padgett (Tallahassee), for Restaurant Law Center and Florida Restaurant and Lodging Association, as amici curiae.

Robinson & Cole LLP and Eugene P. Murphy, for American Property Casualty Insurance Association and National Association of Mutual Insurance Companies, as amici curiae.

Before LOGUE, HENDON and LOBREE, JJ.

LOBREE, J.

Commodore, Inc. d/b/a GreenStreet Café, Inc. ("GreenStreet"), a restaurant and bar located in the Coconut Grove neighborhood of Miami, filed a claim with its commercial property insurer, Certain Underwriters at Lloyd's, London ("Lloyd's"), for business income losses it suffered when it suspended its operations during the COVID-19 pandemic. While Lloyd's was investigating the claim, GreenStreet sought a declaratory judgment that the losses were covered under its insurance policy with Lloyd's. The trial court dismissed GreenStreet's petition for declaratory relief with prejudice, concluding that the policy at issue, which provided coverage for loss of business income due to the suspension of operations "caused by direct physical loss of or damage to property," did not provide coverage for GreenStreet's losses because "'direct physical loss . . .' requires some tangible alteration to insured property." GreenStreet appeals from the final judgment of dismissal of its petition for declaratory relief. Because the trial court correctly determined that the economic losses allegedly suffered by GreenStreet are not covered under the policy, we affirm.

<u>Factual and Procedural Background</u>

Lloyd's issued an all-risk commercial property policy (the "Policy") to GreenStreet, effective from February 15, 2020, to February 15, 2021.  The Policy provides commercial property insurance "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  Relevant here, the Policy includes a Business Income (and Extra Expense) Coverage Form, which reads, in part, as follows:

**A. Coverage**

**1. Business Income**

\* \* \*

We will pay for the actual loss of Business income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". *The "suspension" must be caused by direct physical loss of or damage to property at premises* which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

\* \* \*

**2. Extra Expense**

\* \* \*

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

3

(emphasis added). The "period of restoration" is a defined term in the Business Income (and Extra Expense) Coverage Form, and provides in relevant part, as follows:

**F. Definitions**

\* \* \*

**3.** "Period of restoration" means the period of time that:

**a.** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

The policy does not contain a virus exclusion.

As was common throughout the country during the COVID-19 virus pandemic, on March 15, 2020, the City of Miami issued a local emergency measure stating that no business was permitted to operate at excess of 50% of its authorized total occupancy load and limiting the hours of operations of non-essential businesses. This emergency measure was followed shortly thereafter by Miami-Dade County emergency order 03-20, which ordered

4

restaurants with seating for more than eight people to close on-premises service of customers and the City of Miami's second amendment to local emergency measures, which prohibited restaurants from serving food for consumption in dining areas in premises. As a result of these orders, GreenStreet suspended its operations. Notably, under the orders, restaurants were still permitted to operate for delivery, pick-up, or take-out services, and delivery personnel, employees, contractors, and janitorial personnel were allowed access to the establishments.[1]

GreenStreet promptly submitted a claim to Lloyd's for its losses. After Lloyd's neither issued a coverage position nor paid the claim, GreenStreet filed a petition for declaratory relief and damages seeking a declaratory judgment that the economic losses it suffered due to the suspension of its operations were covered under the Policy. GreenStreet alleged that the emergency orders issued to minimize the spread of COVID-19 "effectively limited on-premises dining and operations, resulting in a suspension of necessary operations and an immediate loss of Business Income and Extra Expense." Although the Policy did not define the phrase "physical loss of or damage to property," GreenStreet claimed that the phrase is reasonably

---

[1] At oral argument, GreenStreet acknowledged that after it suspended operations on March 17, it later provided take-out dining services.

5

interpreted to include a case where the insured commercial property is unusable for its intended income-producing use. In addition to loss of business income, GreenStreet also alleged that it incurred extra expense during the suspension of its business in the form of cleaning and disinfecting costs.

Lloyd's moved to dismiss the petition. After holding a hearing, the trial court dismissed GreenStreet's petition with prejudice and entered final judgment in favor of Lloyd's,[2] reasoning that "Florida precedent strongly suggests that 'direct physical loss of or damage to property' requires some tangible alteration to insured property, something Plaintiff has not—and

---

[2] We note that the trial court procedurally erred in disposing of the issue of coverage on Lloyd's' motion to dismiss. Express Damage Restoration, LLC v. First Cmty. Ins. Co., 314 So. 3d 532, 534-35 (Fla. 3d DCA 2020) (holding that trial court procedurally erred when it reached issue of construction of insurance policy in dismissing complaint for declaratory judgment); see also Smith v. City of Fort Myers, 898 So. 2d 1177, 1178 (Fla. 2d DCA 2005) ("In determining the sufficiency of a complaint for declaratory judgment, the question is whether the plaintiff is entitled to a declaration of rights, not whether the plaintiff will prevail in obtaining the decree he or she seeks."); Floyd v. Guardian Life Ins. Co. of Am., 415 So. 2d 103, 105 (Fla. 3d DCA 1982) ("The possibility that a proper interpretation of the insurance policy would result in a decree adverse to plaintiffs does not preclude their right to a declaratory decree."). However, GreenStreet expressly waived in its initial brief any objection to this procedural error. Because a justiciable issue existed between the parties, the trial court had jurisdiction to entertain GreenStreet's claim for declaratory relief, and we may reach the merits of the coverage issue. Cf. State, Dept. of Env't Prot. v. Garcia, 99 So. 3d 539, 545 (Fla. 3d DCA 2011).

cannot—allege."  GreenStreet's appeal followed.

Standard of Review

"We review de novo an order dismissing a declaratory judgment count for failure to state a cause of action."  Express Damage Restoration, LLC, 314 So. 3d at 534; accord Yacht Club by Luxcom, LLC v. Village of Palmetto Bay, 306 So. 3d 268, 271 n.4 (Fla. 3d DCA 2020).

Analysis

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such policy."  Allstate Fire & Cas. Ins. Co. v. Hradecky, 208 So. 3d 184, 186 (Fla. 3d DCA 2016).  On that basis, "we must follow the guiding principle that [the Florida Supreme] Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy."  Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003); accord State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569 (Fla. 2011) ("In interpreting an insurance contract, we are bound by the plain meaning of the contract's text."); Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) ("Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.").  Thus, in the absence of "a genuine

7

inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction," courts are not free to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979).

"[S]imply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." Swire Pac. Holdings, Inc., 845 So. 2d at 165; accord Menendez, 70 So. 3d at 570; Grover Com. Enters. v. Aspen Ins. UK, Ltd., 202 So. 3d 877, 880 (Fla. 3d DCA 2016). To that end, "[t]he failure to define a term involving coverage does not necessarily render the term ambiguous." Barcelona Hotel, LLC v. Nova Cas. Co., 57 So. 3d 228, 230 (Fla. 3d DCA 2011); accord Swire Pac. Holdings, Inc., 845 So. 2d at 166. When a term or provision is undefined in the policy, its plain, everyday usage is applied. Heritage Prop. & Cas. Ins. Co. v. Condo. Ass'n of Gateway House Apts. Inc., 46 Fla. L. Weekly D1867, D1868 (Fla. 3d DCA Aug. 18, 2021) (stating "well-established principle that '[w]hen a policy provision remains undefined, common everyday usage determines its meaning'" (quoting Sec. Ins. Co. of Hartford v. Com. Credit Equip. Corp., 399 So. 2d 31, 34 (Fla. 3d DCA 1981))); see also State Farm Fire & Cas. Co. v. Castillo, 829 So. 2d 242, 244 (Fla. 3d DCA 2002) ("[T]erms

8

utilized in an insurance policy should be given their plain and unambiguous meaning as understood by the 'man-on-the-street.'").

It is firmly established that "[i]n interpreting 'insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'" City of Florida City v. Pub. Risk Mgmt. of Fla., 307 So. 3d 135, 138 (Fla. 3d DCA 2020) (quoting Anderson, 756 So. 2d at 34); see also State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1075 (Fla. 1998) ("[P]rinciples governing the construction of insurance contracts dictate that '[w]hen construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*.'" (quoting Nationwide Mut. Fire Ins. Co. v. Olah, 662 So. 2d 980, 982 (Fla. 2d DCA 1995))). Moreover, "[a]ll the various provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each." Univ. of Miami v. Frank, 920 So. 2d 81, 87 (Fla. 3d DCA 2006) (quoting Paddock v. Bay Concrete Indus., Inc., 154 So. 2d 313, 315 (Fla. 2d DCA 1963)).

Here, the Policy does not cover claims for business income losses unless those losses arise from a suspension of operations "caused by direct physical loss of or damage to property." The parties' dispute, therefore, comes down to the meaning of that qualifying phrase, which is undefined in the Policy. GreenStreet primarily advances two arguments in support of its

9

position that economic losses caused by the loss of intended use of its business property, without accompanying actual, tangible alteration to the property, triggers coverage under the Policy. First, GreenStreet asserts that the trial court failed to consider the ordinary, dictionary definitions of the terms used in the qualifying phrase. Second, GreenStreet argues that the First District Court of Appeal's decision in Azalea, Ltd. v. American States Insurance Co., 656 So. 2d 600 (Fla. 1st DCA 1995), controls here and mandates the conclusion that the inability to use insured property for its intended use constitutes a direct physical loss of property. Applying the above principles, as well as decisions from this Court addressing materially similar language to the phrase at issue, we find that neither of GreenStreet's arguments has merit.

Turning to the text of the relevant phrase, GreenStreet argues that under its plain terms, "physical loss of or damage to property" can occur absent "structural alteration" of the insured property. GreenStreet asserts that in determining the meaning of the phrase, the trial court failed to consult legal and non-legal dictionaries. It is true that "the first step towards discerning the plain meaning of [a term undefined by an insurance policy] is to 'consult references [that are] commonly relied upon to supply the accepted meaning of [the] words.'" Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d

10

108, 111 (Fla. 3d DCA 2019) (quoting Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010)); Barcelona Hotel, LLC, 57 So. 3d at 231. Even so, GreenStreet's argument fails.

Because the Merriam-Webster dictionary defines "loss" as "losing possession and deprivation," GreenStreet asks that we look, in turn, to the definition of "deprivation": "the state of being kept from possessing, enjoying, or using something." Deprivation, Merriam-Webster's Online Dictionary, https://merriam-webster.com/dictionary/deprivation/ def. 1. But the use of "deprivation" as a synonym for "loss" does not address fact that the phrase still requires "physical" loss, and GreenStreet's interpretation of "physical" is incomplete. See Santo's Italian Café, LLC v. Acuity Ins. Co., 15 F.4th 398, 404 (6th Cir. 2021) ("Santo's Café adds that 'loss' is a synonym for 'deprivation' and that it was deprived of its ability to use the premises for its intended purpose. . . . But this argument skates over the unrelenting imperative that the policy covers only 'physical' losses."). GreenStreet claims that "physical" merely means that a loss is not imagined. Physical, however, means "of or relating to matter or the material world; natural; tangible, concrete." See Physical, Oxford English Dictionary Online (3d ed. 2006), https://www.oed.com/, def. 6; see also Physical, Black's Law Dictionary (11th ed. 2019) ("1. Of, relating to, or involving the material

11

universe and its phenomena; relating to the physical sciences. 2. Of, relating to, or involving material things; pertaining to real, tangible objects."). Thus, because the ordinary meaning of "physical" carries a tangible aspect, "direct physical loss" requires some actual alteration to the insured property.

Indeed, we held as much in <u>Homeowners Choice Property & Casualty v. Maspons</u>, 211 So. 3d 1067 (Fla. 3d DCA 2017), where we considered a materially similar phrase. In <u>Maspons</u>, the homeowners' insurance policy provided that it insured "against risk of **direct loss** to property described in Coverages A and B only if that loss is a **physical loss** to property." <u>Id.</u> at 1069. The homeowners sought coverage under an ensuing loss provision for the cost of tearing up and replacing the foundation above a broken pipe. <u>Id.</u> In reversing summary judgment in favor of the homeowners because the slab had not been opened and therefore ensuing loss could not yet be determined, this Court concluded that given the dictionary definition of "loss," the broken pipe constituted a direct and physical loss to the property. <u>Id.</u> "A 'loss' is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property. <u>Loss</u>, <u>Black's Law Dictionary</u> (10th ed. 2014). 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual." <u>Id.</u> This Court reiterated that a direct physical loss means that the property was "actually damaged" in

12

<u>Vazquez v. Citizens Property Insurance Corp.</u>, 304 So. 3d 1280, 1284-85 (Fla. 3d DCA 2020) (finding trial court's determination that insured loss was "the property that was actually damaged" was consistent with policy's plain language providing coverage for "direct loss to property . . . only if that loss is a physical loss to property"); <u>see also</u> <u>Mama Jo's, Inc. v. Sparta Ins. Co.</u>, 823 F. App'x 868, 879 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 1737 (2021) (relying on <u>Maspons</u> and <u>Vazquez</u> to affirm district court's conclusion that restaurant did not suffer a "direct physical loss" triggering coverage where restaurant was inundated with dust and debris from nearby road construction which required only cleaning and painting of property).  Actual damage has a tangible aspect—it exits in fact.  Given the tangible aspects of a physical loss, GreenStreet's reliance on a truncated definition of "physical" to prove coverage under the plain language of the Policy fails.  As Chief Judge Sutton succinctly wrote, in addressing the same phrase in an Ohio insurance policy:

> Whether one sticks with the terms themselves (a "direct physical loss of" property) or a thesaurus-rich paraphrase of them (an "immediate" "tangible" "deprivation" of property), the conclusion is the same. The policy does not cover this loss.  The restaurant has not been tangibly destroyed, whether in part or in full.  And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use.

13

Santo's Italian Cafe LLC, 15 F.4th at 401.

GreenStreet argues that interpreting the Policy in this manner violates the contextual cannon that a contract should not be interpreted to render words redundant. Put differently, GreenStreet argues that the Llyod's conflates the terms "loss of" and "damage to," which are set forth in the disjunctive in the phrase "physical loss of *or* damage to property." But the terms are not redundant. Loss can include theft or complete ruin, while damage is considered a lesser harm to the property. In other words, "loss of" and "damage to" are degrees of harm, which in all events must be physical in order for there to be coverage. See, e.g., Santo's Italian Cafe LLC, 15 F.4th at 404 ("There is no need to read 'physical loss' to include a deprivation of some particular use of a property in order to give the phrase independent meaning. That possibility could occur whenever a policy holder is deprived of property without any damage to it, say a portable grill or a delivery truck stolen without a scratch."); Michael Cetta, Inc. v. Admiral Indem. Co., 506 F. Supp. 3d 168, 180 (S.D.N.Y. 2020) ("[T]he term 'loss' would seem to include 'theft or misplacement,' which would not constitute damage to the property. Further, 'loss' would extend to the *complete* destruction of property, whereas 'damage' contemplates a lesser injury." (citation omitted)). Because "loss of" can reasonably be interpreted to cover

14

different scenarios than "damage to," the surplusage cannon is not violated. See Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").

GreenStreet further argues that the only binding case on the issue is Azalea, Ltd., 656 So. 2d at 600, which it asserts stands for the rule that physical loss occurs when the property no longer serves its function, even though there has been no "permanent structural alteration of property." GreenStreet misreads Azalea Ltd. In that case, a mobile home park insured its sewage treatment building under a policy providing coverage for "direct physical loss of or damage to Covered Property." Id. An unknown substance was dumped into the treatment facility. Id. at 601. The chemical residue from the dumped substance adhered to the treatment facility, destroying the bacteria colony, which was "an integral part of the sewage treatment facility" and "specifically attached to and [a] part of the treatment facility structure." Id. at 601-02. "The facility could not operate or exist unless this colony was replaced." Id. at 602. The First District reversed the trial court's coverage

15

denial, rejecting the insurer's argument that "there was no actual harm" to the premises. Id. Specifically, the First District concluded that "there was direct damage to the structure" because "[t]he residue from the dumped substance actually covered and adhered to the interior of the structure causing destruction of the bacteria colony which was an integral part of the covered facility." Id. Thus, in Azalea, Ltd., there was actual, tangible damage to the property, and the case does not assist GreenStreet.

Reading the phrase "direct physical loss of or damage to" in the context of the entirety of the Business Income (and Extra Expense) Coverage Form further supports our conclusion that loss of intended use alone, without tangible alteration to the property, is not sufficient to trigger coverage under the plain language of the Policy. The coverage for business income states that Lloyd's will pay for actual loss of business income sustained "due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" It also provides coverage for extra expenses incurred during the "period of restoration." The Policy, in turn, defines "period of restoration" as beginning seventy-two hours after the time of "direct physical loss or damage" and ending on the earlier of "[t]he date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent

16

location."  (emphasis added).  Thus, the "period of restoration" provision contemplates physical, tangible alterations to the property that need to be corrected.  See Malaube, LLC v. Greenwich Ins. Co., No. 20-22615-CIV, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (stating definition for "restoration period" contemplates physical damage to property and "[t]his means that, if we construe 'direct physical loss or damage' to require actual harm, it gives effect to the other provisions in the policy.  And that is exactly what Florida law requires us to do so that no section of the insurance policy is left meaningless."); see also Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141, 1144 (8th Cir. 2021) ("The unambiguous requirement that the loss or damage be physical in nature accords with the policy's coverage of lost business income and incurred extra expense during the 'period of restoration.' . . . That the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, *not mere loss of use*." (emphasis added)); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 892 (9th Cir. 2021) (considering same definition of "period of restoration" and concluding that "[t]o interpret the Policy to provide coverage absent physical damage would render the 'period of restoration' clause superfluous").  GreenStreet's only argument concerning the "period of restoration" is that it simply

17

addresses the time before normal use of the property can resume. This argument denies the full meaning and operative effect of the words "repaired, rebuilt or replaced with . . . similar quality." See City of Florida City, 307 So. 3d at 138.

Thus, under this Court's case law and the plain language of the Policy, loss of intended use alone does not constitute "direct physical loss." Instead, "direct physical loss of or damage to property" requires actual, tangible alteration to the insured property for coverage to be triggered under the Policy. GreenStreet's allegation that it suffered economic losses due to the City of Miami and Miami-Dade County closure orders does not satisfy this requirement. In this unique circumstance, where the City and County orders prohibited in-person dining, "[i]t was as if the government temporarily rezoned all restaurants . . . solely for takeout dining." Santo's Italian Café, LLC, 15 F.4th at 402. And "[t]o the extent [COVID-19] *is* a physical harm, such as COVID-19 particles present on surfaces in the restaurant, those can be easily cleaned." Town Kitchen LLC v. Certain Underwriters at Lloyd's, London, 522 F. Supp. 3d 1216, 1225 (S.D. Fla. 2021); see Mama Jo's, Inc., 823 F. App'x at 879 ("[U]nder Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"). In short, the difference "between [GreenStreet's] loss of use

18

theory and something clearly covered—like a hurricane—is that the property did not change.  The world around it did.  And for the property to be useable again, no repair or change can be made to the property—the world must change."  Town Kitchen LLC, 522 F. Supp. 3d at 1222.

Conclusion

Because the trial court's finding that the phrase "'direct physical loss of or damage to property' requires some tangible alteration to insured property" comports with the common meaning of its terms and the context of the Policy as a whole, the court did not err in its interpretation of the Policy.  We therefore affirm the trial court's ruling that the economic losses GreenStreet suffered when it suspended its operations due to the COVID-19 pandemic does not give rise to coverage under the Policy.[3]  The trial court did not err in dismissing GreenStreet's petition for declaratory relief and damages with prejudice.

Affirmed.

---

[3]  By our decision we do not mean to say that virus particles could never result in a tangible alteration to property, only that this is not the case here.